UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | | |
|---|---|---|---|
| ADAMS, NASH & HASKELL, INC., | : | | |
| | : | | |
| Plaintiff, | : | Civil Action No.: | 20-1916 (RC) |
| | : | | |
| v. | : | Re Document No.: | 22 |
| | : | | |
| UNITED STATES OF AMERICA, | : | | |
| | : | | |
| Defendant. | : | | |

MEMORANDUM OPINION

GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS

I.  INTRODUCTION

In this case, Plaintiff Adams, Nash & Haskell, Inc. ("ANH"), a labor relations strategist based in Kentucky, brings claims under the Lanham Act for trademark infringement, false designation of origin, and unfair competition against Defendant United States of America (the "Government").  ANH is the registered owner of the trademark "VIEWPOINT," which it uses in connection with employee opinion surveys.  Every year, the Government, through the U.S. Office of Personnel Management, conducts a survey of federal executive branch employees called the Federal Employee Viewpoint Survey.  ANH argues that the Government's use of the word "viewpoint" in its survey violates federal trademark law.  Before the Court is the Government's motion to dismiss.  The Government argues that because it has conducted the Federal Employee Viewpoint Survey since 2010, and any claims against the Government must be brought within six years of accrual, ANH's claims are time barred.  The Government also claims that ANH has failed to state a plausible claim of false designation of origin.  For the reasons set forth below, the Court concludes that dismissal of the claims on statute of limitations grounds is inappropriate at this early stage.  The Court agrees, however, that ANH has failed to

plead a plausible claim of false designation of origin. Accordingly, the Court grants in part and denies in part the Government's motion.

## II.  BACKGROUND

According to the Amended Complaint, ANH is a labor relations strategist based in Erlanger, Kentucky. Am. Compl. ¶ 7, ECF No. 5. The company "provides employers with, among other things, guidance regarding employee opinions relating to their employment." *Id.* In connection with this business, ANH offers assessment tools such as employee surveys. *Id.* ¶ 8. ANH owns the trademark "VIEWPOINT," which it registered in 1994 for use in conducting employee opinion surveys. *Id.* ¶ 9–10; *see also* Am. Compl. Ex. A. ANH alleges that because of "long and widespread use" of the trademark, including "extensive promotion and advertising," the company "has established extensive goodwill, public recognition, and secondary meaning for the VIEWPOINT mark as an identifier of ANH in the United States." *Id.* ¶ 11. Outside of these general allegations of fact, ANH does not provide any examples of how it uses the mark.

ANH alleges that the government "is using the mark VIEWPOINT for the purpose of conducting employee opinion surveys." *Id.* ¶ 12. And because the government "has no connection or association with ANH and is not authorized by ANH to use the VIEWPOINT mark," *id.* ¶ 13, the company brings counts against the government under the Lanham Act for federal trademark infringement, under 15 U.S.C. § 1114, false designation of origin, under 15 U.S.C. § 1125(a), and unfair competition, also under 15 U.S.C. § 1125(a), *see id.* ¶¶ 14–23.[1] ANH attached to the Amended Complaint an article titled "The Best Places to Work in the

---

[1] The Amended Complaint also includes a count for violations of state law and a count for dilution. *See id.* ¶¶ 24–32. In a prior pleading, ANH indicated that the Government has not waived sovereign immunity with respect to the state law claims and that it has withdrawn the claim asserting dilution. *See* ANH's Opp'n Gov't Mot. Dismiss at 13, ECF No. 8. As such, the only operative claims that remain are the federal claims brought pursuant to the Lanham Act.

Federal Government 2018 Rankings," which appears to be authored by Partnership for Public Service.  *See* Am. Compl. Ex. B.  The attached article references the "U.S. Office of Personnel Management's Federal Employee Viewpoint Survey." *Id.*  Outside of the attached exhibit and allegation that the government "uses the VIEWPOINT mark for the purpose of conducting employee opinion surveys," Am. Compl. ¶ 12, the Amended Complaint does not describe or provide any examples of how the government uses the mark.

ANH originally filed suit in the District of New Jersey.  *See* Compl., ECF No. 1.  ANH amended its original complaint as a matter of right less than a month after first filing suit.  *See* Am. Compl.  Upon consideration of the government's initial motion to dismiss, the District of New Jersey transferred this matter to this Court.  *See* Order, ECF No. 15.  The government has now filed a new motion to dismiss, arguing that the statute of limitations for claims against the government bars ANH's claims and that, independently, ANH has failed to state a plausible false designation of origin claim.  *See* Gov't Mot. Dismiss, ECF No. 22.  The government's motion is fully briefed and ripe for decision.  *See* ANH's Opp'n Mot. Dismiss ("ANH's Opp'n"), ECF No. 24; Gov't Reply Supp. Mot. Dismiss ("Gov't Reply"), ECF No. 26.

### III.  LEGAL STANDARD

The Federal Rules of Civil Procedure require that a complaint contain "a short and plain statement of the claim" in order to give the defendant fair notice of the claim and the grounds upon which it rests.  Fed. R. Civ. P. 8(a)(2); *see also Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (per curiam).  A motion to dismiss under Rule 12(b)(6) does not test a plaintiff's ultimate likelihood of success on the merits; rather, it tests whether a plaintiff has properly stated a claim. *See Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974).  The complaint's factual allegations are to be taken as true, and the court is to construe them liberally in the plaintiff's favor.  *See, e.g.*, *United*

*States v. Philip Morris, Inc.*, 116 F. Supp. 2d 131, 135 (D.D.C. 2000).  Notwithstanding this liberal construal, the court deciding a Rule 12 motion must parse the complaint for "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  This plausibility requirement means that a plaintiff's factual allegations "must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)."  *Twombly*, 550 U.S. at 555–56 (citations omitted).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are insufficient to withstand a motion to dismiss.  *Iqbal*, 556 U.S. at 678.  A court need not accept a plaintiff's legal conclusions as true, *see id.*, nor must a court presume the veracity of legal conclusions that are couched as factual allegations, *see Twombly*, 550 U.S. at 555.

### IV.  ANALYSIS

The Government puts forth two primary arguments.  First, the Government claims that ANH's claims are time barred pursuant to the statute of limitations for claims brought against the federal government.  Second, and independently, the Government asserts that ANH has failed to plead a plausible claim of false designation of origin.  Because the Court concludes that it cannot dismiss ANH's claims on statute of limitations grounds at this early stage, it will consider both arguments.

#### A.  Statute of Limitations

Federal law provides that every "civil action commenced against the United States shall be barred unless the complaint is filed within six years after the right of action first accrues."  28 U.S.C. § 2401(a).  "Section 2401(a) generally applies to all civil actions whether legal, equitable,

4

or mixed." *Felter v. Kempthorne*, 473 F.3d 1255, 1259 (D.C. Cir. 2007) (citation omitted). Recently, the D.C. Circuit clarified that, in light of the Supreme Court's decision in *United States v. Kwai Fun Wong*, 575 U.S. 402 (2015), the time bar in Section 2401(a) "is nonjurisdictional and subject to equitable tolling." *Jackson v. Modly*, 949 F.3d 763, 778 (D.C. Cir. 2020).[2] The parties agree that Section 2401(a) applies to the federal claims brought against the government in this case. *See* Gov't Mot. Dismiss at 9–10; ANH's Opp'n at 9.[3]

Although Section 2401(a) sets the statute of limitations bar at six years, it does not define when a "right of action first accrues." Courts "determine the time at which [a] federal claim accrued—the moment at which the limitations period began to run—by consulting federal law."

---

[2] ANH argues that the Government waived its statute of limitations defense because it did not raise it in its initial motion to dismiss. *See* ANH's Opp'n at 17. It is not clear whether the Government is correct that because both the D.C. Circuit and the Third Circuit (where this case was originally filed) viewed Section 2401(a) as creating a jurisdictional condition at the time the Government filed its first motion to dismiss, the defense could not be waived. *See* Gov't Reply at 3–4. The Government filed its first motion to dismiss on April 28, 2019. *See* ECF No. 7. The D.C. Circuit did not rule that Section 2401(a) did not create a jurisdictional condition until February of 2020. *See Jackson v. Modly*, 949 F.3d 763, 776 (D.C. Cir. 2020). Given the timing of the changing precedent, the Government suggests that "there was no non-jurisdictional statute of limitations defense to waive at the time of the Government's original Motion to Dismiss." Gov't Reply at 4; *see also* ANH's Notice Supp. Auth., ECF No. 27; Gov't Reply Notice of Supp. Auth., ECF No. 28. In any event, although the Government may be prohibited from raising the statute of limitations defense in its second pre-answer motion, *see* Fed. R. Civ. P. 12(g)(2) ("[A] party that makes a motion under this rule must not make another motion under this rule raising a defense or objection that was available to the party but omitted from its earlier motion."), the Government has not permanently waived it, *see* Fed. R. Civ. P. 12(h)(2) (stating that "failure to state a claim upon which relief can be granted" may be raised "in any pleading allowed or ordered under Rule 7(a)"). Because the Court concludes that it cannot dismiss ANH's claims based on the statute of limitations defense at this stage, it need not further address whether the changing precedent renders the defense unavailable in the Government's second pre-answer motion.

[3] Although Section 2401(a) applies in this case because the Government is a party, to determine whether a Lanham Act claim was filed in a timely manner in normal circumstances, "courts apply the equitable doctrine of laches because the Lanham Act does not contain a statute of limitations." *Paleteria La Michoacana, Inc. v. Productos Lacteos Tocumbo S.A. De C.V.*, 69 F. Supp. 3d 175, 213 (D.D.C. 2014) (quoting *Gaudreau v. Am. Promotional Events, Inc.*, 511 F. Supp. 2d 152, 158 (D.D.C. 2007)).

5

*Connors v. Hallmark & Son Coal Co.*, 935 F.2d 336, 341 (D.C. Cir. 1991). In *Connors*, the D.C. Circuit explained that "the discovery rule is the general accrual rule in federal courts" applicable to federal questions "in the absence of contrary directive from Congress." *Id.* at 342; *see also Jack's Canoes & Kayaks, LLC v. Nat'l Park Serv.*, 933 F. Supp. 2d 58, 75 (D.D.C. 2013) ("[I]t is well-established in the D.C. Circuit that the 'discovery rule is the general accrual rule in federal courts'" (quoting *Connors*, 935 F.2d at 342)); *Flynn v. Pulaski Const. Co., Inc.*, No. 02-cv-02336, 2006 WL 47304, at *10 (D.D.C. Jan. 6, 2006) (stating "the accrual period is determined as a matter of federal common law" and that "the accrual period begins to run based on the injury discovery rule"). Under the discovery rule, "the statute of limitations does not begin to run 'until the plaintiff discovers, or with reasonable due diligence should have discovered, the injury that is the basis of the action.'" *Jordan v. Dist. of Columbia*, 161 F. Supp. 3d 45, 62 (D.D.C. 2016) (quoting *Connors*, 935 F.2d at 341)). Although the Government argues that the discovery rule is inapplicable to this case, *see* Gov't Reply at 10–12, it points to no directive from Congress or other contrary authority suggesting that the rule—which applies generally in federal courts—is inapplicable here.[4] Accordingly, the Court finds the discovery rule applies in this case.

The D.C. Circuit has stated that "courts should hesitate to dismiss a complaint on statute of limitations grounds based solely on the face of the complaint." *Firestone v. Firestone*, 76 F.3d 1205, 1209 (D.C. Cir. 1996). "[B]ecause statute of limitations issues often depend on contested questions of fact, dismissal is appropriate only if the complaint on its face is conclusively time-barred." *Id.* (citing *Richards v. Mileski*, 662 F.2d 65, 73 (D.C. Cir. 1981)). "A

---

[4] In *Connors*, the D.C. Circuit explained that the "time of injury rule," which the Government argues should apply here, "can be considered analytically as but a particular instance of the discovery rule: if the injury is such that is should reasonably be discovered at the time it occurs, then the plaintiff should be charged with discovery of the injury . . . at that time." *Connors*, 935 F.2d at 342.

6

court may dismiss a claim on statute of limitations grounds only if 'no reasonable person could disagree on the date' on which the cause of action accrued." *Smith v. Brown & Williamson Tobacco Corp.*, 3 F. Supp. 2d 1473, 1475 (D.D.C. 1998) (quoting *Kuwait Airways Corp. v. Am. Sec. Bank, N.A.*, 890 F.2d 456, 463 n.11 (D.C. Cir. 1989)).

  The Government argues that all the claims brought by ANH are conclusively time-barred by Section 2401(a). *See* Gov't Mot. Dismiss at 10–13. To support its argument, the Government asks that the Court take judicial notice of public uses of the term "Federal Employee Viewpoint Survey" since it began referring to its annual government-wide survey as such in 2010. *See id.* at 5–7. The Government attached eighty-one exhibits to its motion. The exhibits include the published results of its government-wide employee survey, *see* Gov't Mot. Dismiss Exs. 1–14, ECF Nos. 2–15; news articles referencing the Federal Employee Viewpoint Survey, *see* Gov't Mot. Dismiss Exs. 15–42, ECF Nos. 16–43; scholarly works and academic commentary about the survey, *see* Gov't Mot. Dismiss Exs. 43–57, ECF Nos. 44–58; trade association reporting, *see* Gov't Mot. Dismiss Exs. 59–62, ECF Nos. 60–63; and references to the survey in the Federal Register, *see* Gov't Mot. Dismiss Exs. 63–81, ECF Nos. 64–82. Based on the facts plead and the facts requested to be noticed, the Government argues that the "Office of Personnel Management has used the name 'Federal Employee Viewpoint Survey' since 2010 in a manner that was conspicuous, public, widespread, and government-wide." Gov't Mot. Dismiss at 10. For this reason, the Government contends that ANH's claims accrued not later than 2010 and that ANH's complaint, filed on January 31, 2019, was untimely under Section 2401(a). *Id.* The Government argues that the widespread and conspicuous public use of the term constitutes inquiry notice sufficient to trigger accrual of ANH's claims. *See* Gov't Reply at 9.

ANH counters that the facts alleged in the Amended Complaint and those requested to be noticed do not show that it "reasonably should have known that it had suffered injury due to [the Government's] wrongful conduct." ANH's Opp'n at 11. ANH points out that for dismissal to be appropriate, the Government "would have to demonstrate ANH reasonably should have known of [the Government's] conduct before January 13, 2013, six years prior to the filing of the Complaint." *Id.* Because the information attached to the Government's motion contains only limited evidence predating January 13, 2013, ANH contends that much of the Government's submission is irrelevant to the question before the Court. *See id.* at 12. Moreover, ANH argues that the evidence that does predate January 13, 2013 does not establish that it reasonably should have known about the Government's alleged wrongful conduct. *See id.* at 13.

The Court agrees that evidence of the Government's use of the term "Federal Employee Viewpoint Survey" that postdates January 13, 2013 is not relevant to the statute of limitations inquiry. For this reason, although it is appropriate to take judicial notice of the Government's evidence for the limited purpose of demonstrating public use of the term from 2010 to present, *Jacobsen v. Oliver*, 201 F. Supp. 2d 93, 110 (D.D.C. 2002) (taking judicial notice of matters of public record when determining inquiry notice), the Court will only take judicial notice of the relevant exhibits purporting to show public use of the term "VIEWPOINT" that predate January 13, 2013. Accordingly, the Court takes judicial notice of the uses of the term "Federal Employee Viewpoint Survey" as shown in Exhibits 5–8, 15–20, and 62. *See* ECF Nos. 22-6–22-9, 22-16–22-21, and 22-63; *see also Washington Post v. Robinson*, 935 F.2d 282, 291 (D.C. Cir. 1991) ("[A] court may take judicial notice of the existence of newspaper articles in the Washington, D.C., area that publicized [certain facts].").

The Court will briefly summarize the exhibits of which it takes judicial notice. Exhibits 5–8 are the results of the Federal Employee Viewpoint Survey from 2010 to 2013. *See* ECF Nos. 6–9. The reports on the results do not include a publication date or describe where a member of the public could access the information.[5] Exhibits 15–20 are articles that reference the government survey. *See* ECF Nos. 16–21. The articles have various publication dates before January 13, 2013 and appeared in the following sources: Government Executive: Web Edition Articles (USA); The Washington Examiner; The Free Lance-Star of Fredericksburg, Virginia; The Grand Rapids Press;[6] The Picayune Item; and The Baltimore Sun. *See id.* Exhibit 62 is an article that appears to have been published on the website for the Society for Human Resource Management in June 2012. *See* ECF No. 63.

The Court cannot say, based on the facts alleged in the Amended Complaint and those judicially noticed, that "no reasonable person could disagree" that ANH's claims accrued before January 13, 2013. *Smith*, 3 F. Supp. 2d at 1475 (quoting *Kuwait Airways*, 890 F.2d at 463 n.11). "Whether a plaintiff can be charged with inquiry notice is governed by an objective standard, i.e., what a reasonable person would have done in plaintiff's circumstances." *Sandza v. Barclays Bank PLC*, 151 F. Supp. 3d 94, 112 (D.D.C. 2015). Although the materials suggest that the Government publicly used the term "Federal Employee Viewpoint Survey," the judicially

---

[5] In reply, the Government cites the National Defense Authorization Act for Fiscal Year 2004, Pub. L. 108-136 (Nov. 24, 2003) (§ 1128(c)), which states that results of agency employment surveys "shall be made available to the public and posted on the website of the agency involved." Outside of this citation, the Government has not provided any evidence that the results of the Federal Employee Viewpoint Survey for 2010–2013 were in fact made available in accordance with the law.

[6] Although Exhibit 18 references an article published in The Grand Rapids Press, the article appears to be taken from The Washington Post. *See* Gov't Mot. Dismiss Ex. 18.

recognized and alleged facts[7] do not plainly show that a reasonable person in ANH's circumstances would or should have known about its potential claims against the Government.

The Court reaches this conclusion for several reasons. First, the Government has not established that the survey results from 2010 to 2013 were published in a public manner such that this Court should charge ANH with constructive knowledge. Although the published results of the survey may have been available to the public, the Court cannot determine whether a reasonable person in ANH's position would have, or should have, had access to these materials. Second, the articles submitted that were published during the relevant time period appeared in smaller, regional publications outside of Kentucky. Although one of the articles may have appeared in the Washington Post, the record before the Court does not make plain that a person in ANH's position would have seen this coverage. Third, the Court cannot, without more information, charge ANH with constructive knowledge of the article that apparently appeared on the website for Society for Human Resource Management. Overall, it is simply not clear based on the materials currently in the record that a reasonable person in ANH's position would have known about the Government's use of the name Viewpoint in the context of its annual survey of employees prior to January 13, 2013.[8] Based on the current record, the Court cannot pinpoint a precise date of accrual. Perhaps the Court's conclusion would differ if the Government had offered more evidence of widespread, public use of the term dating from the relevant time

---

[7] The Court does not consider the affidavit submitted by ANH alongside its opposition brief. *See* ANH's Opp'n Ex. A, ECF No. 24-1. In any event, whether ANH had actual knowledge does not implicate whether it had inquiry notice of the potential claim, which is based on an objective standard. *See Sandza*, 151 F. Supp. 3d at 112.

[8] The Government argues that the Amended Complaint itself plainly establishes that ANH's claims are time-barred because Exhibit B acknowledges that the Federal Employee Viewpoint Survey has been in use since 2010. Gov't Mot. Dismiss at 12–13. This, however, does not change the application of the discovery rule or inquiry notice analysis because it is a publication about the 2018 survey results. *See* Am. Compl. Ex. B.

period. But because accrual is a question of fact and the submitted materials fail to show that no reasonable person could disagree about the date of accrual, the Court will not dismiss ANH's claims on statute of limitation grounds.[9] *See Sandza*, 151 F. Supp. 3d at 116.

### B.  False Designation of Origin Claim

To prove a claim of false designation of origin under 15 U.S.C. § 1125(a), a plaintiff must prove "that the defendant (1) used a designation or false designation of origin, (2) in interstate commerce, (3) in connection with goods or services, (4) the designation is likely to cause confusion, and (5) plaintiff already has been or is likely to be damaged." *Guantanamera Cigar Co. v. Corporacion Habanos, S.A.*, 672 F. Supp. 2d 106, 109 (D.D.C. 2009) (citations omitted). The Government argues that ANH failed to plead a plausible false designation of origin claim because it did not allege that the Government uses its mark in commerce and because it did not sufficiently plead a likelihood of confusion. *See* Gov't Mot. Dismiss at 14–17.

The Court agrees. First, nowhere does ANH allege that the Government used the mark in commerce. The term "use in commerce" means "the bona fide use of a mark in the ordinary course of trade." 15 U.S.C. § 1127. A mark is deemed to be in use in commerce

> (1) On goods when—(A) it is placed in any manner on the goods or their containers or the displays associated therewith or on the tags or labels affixed thereto, or if the nature of the goods makes such placement impracticable, then on documents associated with the goods or their sale, and (B) the goods are sold or transported in commerce, and (2) on services when it is used or displayed in the sale or advertising of services and the services are rendered in commerce, or the services are rendered in more than one State or in the United States and a foreign country and the person rendering the services is engaged in commerce in connection with the services.

---

[9] Because the Court has determined that it would be inappropriate to dismiss ANH's claim on statute of limitations grounds pursuant to the discovery rule, it does not separately analyze whether the continuous tort doctrine would also allow ANH's claims to survive.

11

*Id.* All that is alleged in the Amended Complaint about the Government's use of the mark is that it "is using the mark VIEWPOINT for the purpose of conducting employee opinion surveys," Am. Compl. ¶ 12, that the use complained of occurs in various locations in New Jersey, *id.* ¶ 6, and that the use is likely connected with many different government agencies, Am. Compl. Ex. B. The Amended Complaint does not speak of any alleged infringing use on goods, in advertisements, or in connection with any services rendered. It does not mention any commercial use whatsoever.

ANH's arguments in opposition are unconvincing. ANH argues that because the Amended Complaint mentions use of the mark by many different government agencies, "[the Government] uses the VIEWPOINT mark in commerce." ANH's Opp'n at 19. According to ANH, the Government "places the VIEWPOINT mark on its goods and services, *i.e.*, the Federal Employee Viewpoint Survey, and [the Government] distributes the Federal Employee Viewpoint Survey throughout the United States." *Id.* ANH suggests that "it is a reasonable inference that these thousands of [alleged] uses over the course of many years . . . constitutes commercial use." *Id.* at 20. But ANH fails to confront the statutory definition of "use in commerce" or explain how the Amended Complaint sufficiently alleges "use in commerce" in accordance with that definition. Plainly, the Amended Complaint does not describe any alleged sale of goods or services associated with the mark. *See 1-800 Contacts, Inc. v. WhenU.Com, Inc.*, 414 F.3d 400, 409 (2d Cir. 2005) ("[The Lanham Act] is concerned with the use of trademarks in connection with the sale of goods or services in a manner likely to lead to consumer confusion as to the source of such good or services."); *Bosley Medical Institute, Inc. v. Kremer*, 403 F.3d 672, 679 (9th Cir. 2005) ("Limiting the Lanham Act to cases where a defendant is trying to profit from a plaintiff's trademark is consistent with the Supreme Court's view that '[a trademark's] function

is simply to designate the goods as the product of a particular trader and to protect his good will against the sale of another's product as his.'" (quoting *United Drug Co. v. Theodore Rectanus Co.*, 248 U.S. 90, 97 (1918)); *see also* J. Thomas McCarthy, *4 McCarthy on Trademarks and Unfair Competition* § 23:5 (5th ed.) ("In-house, private use where the trademark is not seen publicly is not sufficient to constitute infringement.").[10]  For this reason, ANH has failed to plead an essential element of its claim of false designation of origin.

Second, ANH has not plausibly alleged a likelihood of confusion.  To establish a likelihood of confusion between two marks, a plaintiff "must show that 'an appreciable number of ordinary prudent consumers are likely to be misled, or simply confused, as to the source of the goods in question." *Int'l Council of Shopping Centers v. Reconcre, LLC*, No. 20-cv-2551, 2021 WL 148387, at *3 (D.D.C. Jan, 14, 2021) (quoting *Malarkey-Taylor Assocs., Inc. v. Cellular Telecomms. Indus. Ass'n*, 929 F. Supp. 473, 476–77 (D.D.C. 1996)).  Courts in this district consider the eight *Poloroid* factors in assessing likelihood of confusion: (i) the strength of the plaintiff's mark; (ii) the degree of similarity between the two marks; (iii) the proximity of the parties' products; (iv) the likelihood that the prior user will bridge the gap between its market and the second user's market; (v) evidence of actual confusion; (vi) the defendant's intent; (vii) the quality of the defendant's product; and (viii) the sophistication of customers in the relevant market. *Malarkey-Taylor Assocs.*, 929 F. Supp. at 477 (citing *Polaroid Corp. v. Polarad Elecs. Corp.*, 287 F.2d 492, 495 (2d Cir. 1961)).  Considering these factors and accepting as true all the

---

[10] The Fourth Circuit has found that a non-profit's use of a trademark in an article, even where the non-profit's website provided opportunities to donate, could not support an infringement action because "[t]he article in contention was not an advertisement" and "[n]owhere in the piece did it offer the reader anything for sale" or "mention [the non-profit's] services." *Radiance Found., Inc. v. N.A.A.C.P.*, 786 F.3d 316, 332 (4th Cir. 2015).

factual allegations in the Amended Complaint, ANH has not plausibly alleged a likelihood of confusion.

Again, as noted above, the factual allegations describing ANH's and the Government's use of the mark are sparse.[11]  ANH's sole description of its use of the mark is that it "uses its VIEWPOINT trademark in connection with employee opinion surveys, and has done so for many years." Am. Compl. ¶ 10.  ANH explains in general terms that "ANH has established extensive goodwill, public recognition, and secondary meaning for the VIEWPOINT mark as an identifier of ANH in the United States." *Id.* ¶ 11.  As for the Government's alleged use of the mark, the Amended Complaint simply states that the Government "is using the mark VIEWPOINT for the purpose of conducting employee opinion surveys, as demonstrated through representative examples attached as Exhibit B." *Id.* ¶ 12.  Exhibit B is what appears to be a third-party publication ranking the "Best Places to Work in the Federal Government" that mentions the "U.S. Office of Personnel Management's Federal Employee Viewpoint Survey." Am. Compl. Ex. B.  In a footnote, the third-party article again mentions the "Federal Employee Viewpoint Survey." *Id.*  Beyond these allegations, the Amended Complaint offers no other facts describing ANH's or the Government's use of the mark—nothing describing ANH's or the Government's advertising, branding, or other marketing efforts— by which the Court could assess whether a likelihood of confusion is plausible.  Even accepting as true that ANH has established "extensive goodwill public recognition, and secondary meaning for the VIEWPOINT mark," Am. Compl. ¶ 10, and that both ANH and the Government use the mark in connection with employee surveys, the Court is left guessing as to whether the actual uses of the mark would

---

[11] The Court need not consider the legal conclusions or "threadbare recitals" of the cause of action, *see Iqbal*, 556 U.S. at 678, such as the statement that the Government's "use is likely to cause confusion, mistake, and/or deception." Am. Compl. ¶ 16.

14

cause confusion. The one representative example offered in the Amended Complaint—which, again, is a third-party publication, not a Government publication—identifies the Government's survey as the "U.S. Office of Personnel Management's Federal Employee Viewpoint Survey." Am. Compl. Ex. B. Given that the source of the survey is clearly indicated, the Court does not find it plausible that "ordinary prudent consumers are likely to be misled, or simply confused, as to the source of the goods in question." *Int'l Council of Shopping*, 2021 WL 148387, at *3 (quoting *Malarkey-Taylor Assocs*, 929 F. Supp. at 476–77). The Amended Complaint falls short of plausibly establishing a likelihood of confusion, a necessary element for ANH's false designation of origin cause of action.[12]

Because ANH failed to allege sufficient facts as to these two essential elements of its false designation of origin claim, the Court grants the Government's motion to dismiss with respect to Count II.[13]

---

[12] The Court notes that likelihood of confusion can sometimes be considered an essential element for ANH's other causes of action as well. *See Am. Society for Testing Materials, et al. v. Public.Resource.Org, Inc.*, 896 F.3d 437, 456 (D.C. Cir. 2018) (explaining that the inquiry for trademark infringement claim involving registered mark "boils down to two questions: (1) does [the plaintiff] own a valid mark entitled to protection and (2) is [the defendant's] use of it . . . likely to cause confusion" (quotations omitted)); *Int'l Council of Shopping*, 2021 WL 148387, at *2 (noting elements for trademark infringement as including "a substantial likelihood of confusion between the plaintiff's mark and the alleged infringer's mark" (quoting *AARP v. Sycle*, 991 F. Supp. 2d 224, 229 (D.D.C. 2013)); *Guantanamera Cigar*, 672 F. Supp. 2d at 109 (noting elements of unfair competition, including showing that a "designation is likely to cause confusion"). The Government, however, did not argue that ANH's trademark infringement and unfair competition claims should be dismissed for failure to state a claim.

[13] ANH asked in opposition for the opportunity to amend its complaint. ANH's Opp'n at 22–23. Although leave to amend is "freely give[n] [] when justice so requires," Fed. R. Civ. P. 15(a)(2), the Court notes that the law of this circuit requires "filing a motion for leave to amend [the] complaint and attaching a proposed amended complaint," *Rollins v. Wackenhut Servs.*, 703 F.3d 122, 130 (D.C. Cir. 2012) (citing *Belizan v. Hershon*, 434 F.3d 579, 582 (D.C. Cir. 2006)); *see also* D.D.C. Civ. R. 15.1. Because ANH only requested leave to amend in its opposition brief and did not use the appropriate vehicle for amendment in accordance with the local rules, the Court will not grant leave to amend at this time.

## V.  CONCLUSION

For the foregoing reasons, the Government's motion to dismiss (ECF No. 22) is **GRANTED IN PART AND DENIED IN PART**.  An order consistent with this Memorandum Opinion is separately and contemporaneously issued.

Dated:  April 9, 2021                                                                    RUDOLPH CONTRERAS
                                                                                                           United States District Judge